**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DENISE HUNTER, DIANE AVILA, and SHERIDA HUDAK,** | ) ) ) | |
| **Plaintiffs,** | ) ) ) | |
| **v.** | ) ) | **No. 18 C 986** |
| **SERVICE EMPLOYEES INTERNATIONAL UNION ("SEIU"), ELISEO MEDINA, Individually and as Trustee of SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL #73, and MARY KAY HENRY, Individually and as President of SEIU,** | ) ) ) ) ) ) ) ) | **Related case: No. 18 C 2728** **Judge Rebecca R. Pallmeyer** |
| **Defendants.** | ) ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiffs Denise Hunter, Diane Avila, and Sherida Hudak are members in good standing of Service Employees International Union, Local #73 ("Local 73"), a local labor union. Local 73 is affiliated with Defendant, Service Employees International Union ("SEIU"). In August 2016, SEIU took control of Local 73 by placing it into trusteeship. Plaintiffs assert claims arising out of the trusteeship against SEIU; SEIU's President, Defendant Mary Kay Henry; and Local 73's former Trustee, Defendant Eliseo Medina. Plaintiffs allege that Defendants violated Title I of the Labor Management Reporting and Disclosure Act ("LMRDA"), which guarantees, among other things, equal rights and freedom of speech to all union members. *See* 29 U.S.C. § 411 *et seq*. Plaintiffs also allege that Defendants violated Title III of the LMRDA, which governs when and how a labor organization can impose a trusteeship on a subordinate organization. *See* 29 U.S.C. § 461 *et seq*. The trusteeship was in effect when Plaintiffs filed this lawsuit, but it ended in November 2018 after Local 73 elected and installed new officers.

Before the court is Defendants' motion to dismiss for lack of subject matter jurisdiction. For the following reasons, Defendants' motion is granted.

# FACTUAL BACKGROUND

The following facts are taken from Plaintiffs' First Amended Complaint and recounted in the light most favorable to Plaintiffs. *See, e.g.*, *Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017).

## A. The Parties

Plaintiffs are all members in good standing of Local 73. (First Amended Complaint [51] ("First Am. Compl."), ¶ 3.) Local 73 maintains its principal office in Chicago, Illinois. (*Id.* ¶ 4.) It is affiliated with Defendant SEIU. (*Id.* ¶ 3.) Local 73 and SEIU are labor organizations engaged in industries affecting commerce within the meaning of Section 3 of the LMRDA. (*Id.* ¶ 4; *see* 29 U.S.C. §§ 402(i), (j).)

Defendant Henry is the President of SEIU. (First Am. Compl. ¶ 6.) On or about August 3, 2016, SEIU took Local 73 into trusteeship "for the alleged inability of [Local 73's] then President, Christine Boardman, to maintain the democratic process during a membership meeting." (*Id.* ¶ 8.)[1] When Plaintiffs filed this lawsuit, Defendant Medina was Local 73's Trustee. (*See* First Am. Compl. ¶ 7.) Henry had appointed Medina to that position sometime on or after the date the trusteeship began. (*See id.*)

## B. The SEIU Constitution and Bylaws and the Local 73 Constitution and Bylaws

Plaintiffs appear to allege that both the SEIU Constitution and Bylaws and the Local 73 Constitution and Bylaws govern officer elections in Local 73. (*See id.* ¶ 10 (alleging that under

---

[1]    Plaintiffs offer no other details concerning the reasons for imposition of the trusteeship, but the court takes note that in a brief filed more recently, Plaintiffs assert that Defendants took action because, during this membership meeting, Local 73's then-Secretary-Treasurer "claimed to be the new President of the Local." (Plaintiffs' Post-Evidentiary Hearing Brief [57], 3.) Defendants, for their part, state that they imposed the trusteeship to "address[] the severe breakdown in governance caused by destructive in-fighting between" Boardman and the Secretary-Treasurer. (Defendants' Post-Evidentiary Hearing Brief [59], 2.) Defendants further state that, after they imposed the trusteeship, they discovered "severe financial and representational problems that required intensive remedial action." (*Id.* at 3.) For purposes of this motion, the allegations of Plaintiffs' First Amended Complaint are presumed true. *See Bultasa*, 878 F.3d at 573.

the SEIU Constitution and Bylaws, "both the SEIU and Local 73 are charged with the responsibility of conducting the elections of officers"); *id.* ¶ 11 (alleging that the same documents "charg[e]" Local 73 "with conducting elections under its own Constitution and Bylaws").)  Both sets of constitutions and bylaws mandate procedures for nominating and electing officers.  (*See id.* ¶¶ 12-16.)  For example, the SEIU Constitution and Bylaws require nominations to "be made in open convention."  (*Id.* ¶ 12 (internal quotation marks omitted).)  The Local 73 Constitution and Bylaws provide, among other things, that nominations must "take place at the regular membership meeting" after members timely receive notice about the time, place, and purpose of the meeting. (*Id.* ¶ 13 (internal quotation marks omitted).)

## C.     The Trusteeship

As previously noted, SEIU took Local 73 into trusteeship on or about August 3, 2016. (*Id.* ¶ 8.)  Pursuant to the LMRDA, the trusteeship "is presumed invalid after eighteen months," meaning on or after February 3, 2018.  (*Id.* ¶ 9 (citing Section 464(c) of Title III of the LMRDA, 29 U.S.C. § 464(c)).)  Plaintiffs do not expressly allege that Defendants violated Title III by improperly *establishing* the trusteeship.  Rather, they allege that Defendants "have failed to act consistent with the terms of" the LMRDA, the SEIU Constitution and Bylaws, and the Local 73 Constitution and Bylaws "to limit the term of the [t]rusteeship to eighteen months."  (First Am. Compl. ¶ 19.)

Specifically, Plaintiffs allege that Defendants have failed to "seek nominations for a ballot" and "comply with the election procedures necessary . . . to return control of Local 73 to its members."  (*Id.* ¶ 17.)  At the general membership meeting on September 23, 2017, for example, a Local 73 member made a motion to "commence elections" and another member properly seconded it.  (*Id.* ¶ 18.) Local 73's "then Trustee Denise Poloyac," however, "rejected the [m]otion and declared, contrary to previous representations, that the meeting was not a 'general membership meeting.'"  (*Id.*)  Subsequently, on January 4, 2018, certain members of Local 73 created a slate of candidates for officers and executive board members and posted it on a website called Members Leading Members ("MLM").  (*Id.* ¶ 21.)  Complying with the relevant procedures

set forth in the "Constitution and Bylaws,"[2] the website's creators presented the slate "for ratification by the membership." (*Id.*)  The slate was "supported by more than 2000 signatures from the Local 73 membership." (*Id.*)  Four days after the slate was presented for ratification, "seven of the officer candidates listed on [it] . . . were unilaterally suspended, without notice and without due process or hearing." (*Id.* ¶ 22.)  Plaintiffs allege that before their suspension, the candidates were "staff members" of Local 73.  (*See id.* ¶ 33 (referring to "the terminations of the *staff members* of the Members-Leading-Members political slate" (emphasis added)).)  Two days after their suspensions, the officer candidates "were unilaterally terminated, without notice, charges, or due process hearing." (*Id.* ¶ 23.)[3] Defendants informed the officers in writing that the reason for their suspensions and terminations was "their association with the [MLM] website." (*Id.* ¶ 24.)  Plaintiffs allege that by suspending and terminating the officer candidates from their staff positions, Defendants illegally limited those candidates' "rights to free political speech under the LMRDA." (*Id.* ¶ 25.)[4]

**D.    Amendments to the Local 73 Constitution and Bylaws**

Plaintiffs allege that after they filed this lawsuit on February 7, 2018—which was "after the 18 month period of validity for the [t]rusteeship had expired"—Defendants "devised a plan to eliminate the political dissent of the [MLM] slate and essentially continue their [t]rusteeship."

---

[2]     Plaintiffs do not specify which constitution and bylaws they are referring to.

[3]     Plaintiffs do not explain the meaning of the terms "suspend" and "terminate" in this context, but the court assumes Plaintiffs are alleging that the officer candidates lost their staff positions within Local 73 temporarily and then permanently.  Likewise, Plaintiffs do not identify who suspended and terminated the officer candidates.  Given Plaintiffs' allegation that Defendants told the candidates *why* they were suspended and terminated (*see id.* ¶ 24), the court assumes that Defendants effectuated the suspensions and terminations.

[4]     Plaintiffs do not allege that they were among the seven terminated officer candidates, but have asserted, in a brief, that they were "candidates for Executive Board office" on the MLM slate.  (Plaintiffs' Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss [68] ("Pls.' 12(b)(6) Opp."), 3.)

(*Id.* ¶ 26.) Defendants planned to maintain their positions of power, Plaintiffs allege, by amending election- and governance-related provisions of the "Constitution and Bylaws." (*Id.*)[5] According to Plaintiffs, Defendants did not solicit input from the general membership in developing the amendments. (*Id.* ¶ 28.) Instead, a ten-person committee developed them under Medina's leadership. (*Id.* ¶ 27.) Each committee member was either "favorable to the Trustees," which the court assumes is a reference to the trusteeship and/or Medina, or sought elected positions "in the new governing structure," which the court assumes is a reference to a new leadership structure that the amendments would construct. (*Id.*)

Plaintiffs also allege that Defendants administered a vote to pass the amendments "without following the required procedures under the Local or International Constitutions." (*Id.* ¶ 30.) Plaintiffs do not specify what provisions of the constitutions Defendants allegedly violated, nor do they explain what the required procedures are. Instead, Plaintiffs describe what they allege are procedural deficiencies and leave the reader to assume that the deficiencies violate the constitutions. For example, "[t]he proposed changes were not read at a membership meeting," the members did not have an opportunity to discuss or revise the changes, and "[t]he proposed changes were not voted upon by a two-thirds majority at a second membership

---

[5]         Plaintiffs, again, do not specify which constitution and bylaws they are referring to, but their requests for relief make clear that the reference is to the Local 73 Constitution and Bylaws. (*See id.*, Prayer for Relief (2) (asking the court to "[d]eclare the Constitution and By-laws of Local 73 reinstated").) The court also notes that in their First Amended Complaint, Plaintiffs do not specify exactly when Defendants developed their alleged plan to amend the Local 73 Constitution and Bylaws. (*See* First Am. Compl. ¶ 26.) But in their Opposition to Defendants' Motion to Dismiss the Amended Complaint for Lack of Jurisdiction [83] ("Pls.' Opp."), Plaintiffs state that Defendants first spoke of the need for the amendments only after this court "indicated elections [of Local 73 officers] would indeed be forthcoming." (Pls.' Opp. 5.) In fact, the court acknowledged in open court that the parties had agreed that Local 73 should hold elections and end the trusteeship. (*See* June 12, 2018 Hearing Transcript in Case No. 18 C 986 [73] ("June 12, 2018 Hrg. Tr."), at 9:6-11; *see also* Procedural History, *infra*.) The court assumes Plaintiffs' reference is to that statement. In a different filing, Defendants contend that Plaintiffs' representation about the timing of the amendments is inconsistent with the evidence presented in the evidentiary hearing. (*See* Defendants' Memorandum in Support of 12(b)(6) Motion to Dismiss [62], 2 n.1.)

5

meeting." (*Id.* ¶ 30.) Additionally, Local 73's members did not receive timely notice of the vote on the amendments. (*Id.* ¶ 31.) The notice that members did receive was deficient, Plaintiffs allege, including because it provided a synopsis of the amendments rather than the actual language. (*Id.*) Further, "many thousands of members were disenfranchised" because members had to vote in person, but Defendants limited the number of polling locations. (*Id.*) Finally, the trusteeship campaigned at voting sites; the ballot boxes were unmarked, unlocked, and unattended; and "[t]he votes were not counted by an independent agency." (*Id.* ¶¶ 31, 32.)

The amendments (hereinafter the "Amended Local 73 Constitution and Bylaws") passed on June 26, 2018 with "973 yes votes," a number that "represent[ed] less than 4% of the membership." (*Id.* ¶¶ 30, 32.) Plaintiffs allege that the amendments prevent more than sixty-five percent of the MLM candidates from obtaining elected positions, either by eliminating positions or changing eligibility requirements. (*Id.* ¶ 29.)[6]

## E. Plaintiffs' Claims

Plaintiffs allege that Defendants violated Title I of the LMRDA by amending the Local 73 Constitution and Bylaws for an illegal purpose—to suppress "criticism of the trusteeship and quash[] political adversaries"—and by violating provisions of the SEIU and Local 73 constitutions and bylaws in the ratification process. (*See id.* ¶¶ 26-33.) Plaintiffs do not cite specific provisions of Title I, but the court assumes they are invoking Section 101(a)(1), the "equal rights" provision, and Section 101(a)(2), the "freedom of speech and assembly" provision. *See* 29 U.S.C. §§ 411(a)(1), (a)(2). Plaintiffs also appear to allege that Defendants violated Section 101(a)(2) when they suspended and terminated the seven officer candidates on the MLM slate. (*See* First Am. Compl. ¶ 25.)[7] Finally, Plaintiffs allege that Defendants violated Title III of the

---

[6]     Paragraph 29 of the First Amended Complaint is not a complete sentence. The court has done its best to garner Plaintiffs' intended meaning.

[7]     As the court understands Plaintiffs' First Amended Complaint, Plaintiffs include this allegation as evidence of Defendants' efforts to suppress political dissent, rather than as a separate claim. Indeed, in a separate filing, Plaintiffs state that the seven officer candidates have

LMRDA by improperly continuing the trusteeship beyond its eighteen-month period of presumed validity, and by failing to "comply with the election procedures necessary . . . to return control of Local 73 to its members." (*Id.* ¶¶ 17, 19.)

Plaintiffs contend that Local 73's members will suffer harm if the trusteeship continues because they will be deprived "of the officers and executive board members of their choosing." (*Id.* ¶ 34.) As relief, Plaintiffs ask the court to discontinue the trusteeship; reinstate the version of the Local 73 Constitution and Bylaws that was in effect before Defendants imposed the trusteeship (hereinafter the "Pre-Trusteeship Local 73 Constitution and Bylaws"); and invalidate the Amended Local 73 Constitution and Bylaws "as violative of Title I of the LMRDA." (*Id.*, Prayer for Relief (1)-(3).) Plaintiffs also ask the court to order Defendants to "implement the democratic process and initiate election procedures within a reasonable time period pursuant to and in accordance with" the Pre-Trusteeship Local 73 Constitution and Bylaws. (*Id.*, Prayer for Relief (4).)[8] Finally, Plaintiffs request an award of costs, expenses, and attorneys' fees, and such other relief as the court deems proper and just. (*Id.*, Prayer for Relief (5)-(6).)

## **PROCEDURAL HISTORY**

Plaintiffs filed this lawsuit on February 7, 2018. In their original Complaint, they expressly invoked Title III of the LMRDA, but not Title I. (*See generally* Complaint [1].) Plaintiffs' requests for relief in the original Complaint differed from those in the First Amended Complaint only in that they lacked a request to invalidate the Amended Local 73 Constitution and Bylaws under Title I.[9]

---

filed their own case in this district, including to challenge their suspensions and terminations under Title I of the LMRDA. (*See* Pls.' 12(b)(6) Opp. 3.) That case, *English v. Serv. Emps. Int'l Union*, Case. No. 18 C 5272, is pending before Judge Jorge L. Alonso. Separately, the court notes that Plaintiffs do not include specific counts in the First Amended Complaint and, for the most part, do not expressly identify which statute(s) give rise to each request for relief.

[8] There are six prayers for relief, but two of them are labeled "(3)". To reduce confusion, the court uses proper numbering.

[9] In December 2017, before Plaintiffs filed this lawsuit, thirteen members of Local 73 filed a lawsuit in this district seeking to enjoin the continuation of the same trusteeship. *See Greenidge v. Serv. Emps. Int'l Union*, Case No. 17 C 8986. That case was assigned to Judge

Beginning on June 12, 2018, the court held a five-day evidentiary hearing on the claims Plaintiffs asserted in their original Complaint, as well as on the same claims asserted in *Boardman*. The court held the hearing because the parties repeatedly disagreed about various circumstances surrounding the trusteeship—despite the fact that both sides agreed it was appropriate to dissolve the trusteeship and hold an election of Local 73 officers. (June 12, 2018 Hrg. Tr. at 3:21-4:3, 9:6-11.) As the court saw things, with Defendants' agreement that the trusteeship should be dissolved, all that was left for resolution was "exactly when and how" these events should happen and whether it was "necessary first to review changes in the union's constitution." (*Id.* at 9:12-15.)

On the fourth day of the evidentiary hearing, Plaintiffs filed the First Amended Complaint which, as referenced above, expressly asserts claims for injunctive relief under Title I. (*See generally* First Am. Compl.)[10] Thereafter, the parties submitted post-hearing briefs on the claims addressed in the evidentiary hearing. On July 20, 2018, Defendants filed a motion to dismiss the Title I claims that Plaintiffs assert in their First Amended Complaint for failure to state a claim.

---

Alonso. Following a two-day evidentiary hearing, Judge Alonso denied plaintiffs' motion for a preliminary injunction, reasoning that plaintiffs had "not made the required threshold showing either as to irreparable harm or as to the issue of reasonable likelihood of success on the merits." (*See* December 22, 2017 Hearing Tr. in Case No. 17 C 8986 [32], 114:25-115:3; December 22, 2017 Minute Entry in Case No. 17 C 8986 [20].) The parties later stipulated to the dismissal of the case with prejudice. (*See* January 11, 2018 Stipulation of Dismissal in Case No. 17 C 8986 [28].) On March 27, 2018, Defendants in this case asked Judge Alonso to invoke a local rule that would allow this case to be reassigned to him. (*See* Motion for Application of Internal Operating Procedure 13(d) for Reassignment in Case No. 17 C 8986 [34].) Judge Alonso denied the motion. (*See* April 5, 2018 Minute Entry in Case No. 17 C 8986 [36].) Subsequently, in April 2018, Christine Boardman—who was the President of Local 73 before the trusteeship was imposed— filed yet another lawsuit in this district asserting LMRDA Title I and Title III claims arising out of the trusteeship: *Boardman v. Serv. Emps. Int'l Union*, Case No. 18 C 2728 ("*Boardman*"). *Boardman* was originally assigned to a different judge, but Defendants in this case moved for reassignment of *Boardman* to this court as a related case within the meaning of Local Rule 40.4. (*See* Defendants' Motion for Reassignment in Case No. 18 C 986 [21].) The court granted that motion, and *Boardman* is now pending before this court. (*See* May 4, 2018 Minute Entry in Case No. 18 C 986 [24].)

[10] Notably, Plaintiffs contend that they have always asserted Title I claims. (*See* Pls.' Opp. 3 ("This case was validly brought under Title I of the LMRDA back in February . . . .").)

8

*See* FED. R. CIV. P. 12(b)(6).

In October 2018, before the court ruled on the post-hearing briefs and Defendants' first motion to dismiss, Local 73 held an election of executive officers and executive board members. (*See* Declaration of Tyson Roan in Support of Defendants' Motion to Dismiss the Amended Complaint for Lack of Jurisdiction [81-1] ("Roan Decl."), ¶¶ 5-6; *see also* Plaintiffs' November 7, 2018 Status Report [78] ("Pls.' Status Rpt."), ¶ 1.)  The election was governed by the Amended Local 73 Constitution and Bylaws.  (*See* Roan Decl. ¶ 2.)  Local 73's election committee certified the election results on October 23, 2018.  (*Id.* ¶ 6.)  The losing candidate for Local 73 President, Remzi Jaos—who was part of the MLM slate—filed a timely internal appeal of the election results to Local 73.  (Pls.' Status Rpt. ¶ 2.)  Local 73's election committee dismissed the appeal on or about November 5, 2018.  (*See id.* ¶ 3; Roan Decl. ¶ 8.)  Accordingly, the newly elected officers were installed on November 8, 2018 and the trusteeship ended.  (*See* Roan Decl. ¶¶ 6, 9; Defendants' Reply Brief in Support of Motion to Dismiss the Amended Complaint for Lack of Jurisdiction [84] ("Defs.' Reply"), 1.)[11]  Plaintiffs state that Jaos and other members of the MLM slate intend to "file a post-election appeal with the United States Department of Labor."  (Pls.' Status Rpt. ¶ 4.)

In light of these developments, on November 7, 2018, Defendants filed a second motion to dismiss for lack of subject matter jurisdiction.  That motion is addressed in this opinion.

## DISCUSSION

"Federal courts are courts of limited jurisdiction and may only exercise jurisdiction where it is specifically authorized by federal statute."  *Evers v. Astrue*, 536 F.3d 651, 657 (7th Cir. 2008) (internal quotation marks omitted); *see also, e.g.*, *Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001).  Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss

---

[11]  Neither party states whether the executive board members were likewise "installed," nor do they explain whether that fact has any significance to this case.

a claim or lawsuit on the basis that the court lacks subject matter jurisdiction. *See Transit Express*, 246 F.3d at 1023. In considering a motion to dismiss for lack of subject matter jurisdiction, the court must "accept[] as true all well-pleaded factual allegations and draw[] reasonable inferences in favor of the plaintiffs." *Bultasa*, 878 F.3d at 573. Plaintiffs bear the burden of establishing that jurisdictional requirements have been met. *See, e.g.*, *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014); *Transit Express*, 246 F.3d at 1023.

"Mootness strips a federal court of subject-matter jurisdiction." *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 815 (7th Cir. 2018); *see also, e.g.*, *H.P. ex rel. W.P. v. Naperville Cmty. Unit Sch. Dist. #203*, 910 F.3d 957, 960 (7th Cir. 2018) ("Mootness is a jurisdictional defect that may arise at any time."). "A case becomes moot when a court's decision can no longer affect the rights of litigants in the case before them and simply would be an opinion advising what the law would be upon a hypothetical state of facts." *H.P. ex rel. W.P.*, 910 F.3d at 960 (internal quotation marks omitted).

Defendants move to dismiss Plaintiffs' First Amended Complaint for lack of subject matter jurisdiction. They argue that Plaintiffs' request to discontinue the trusteeship by ordering elections is moot and that the remaining remedies Plaintiffs seek are "within the exclusive jurisdiction of the Secretary of Labor." (Defendants' Brief in Support of Motion to Dismiss the Amended Complaint for Lack of Jurisdiction [81] ("Defs.' Br."), at 2 (discussing Title IV of the LMRDA, 29 U.S.C. §§ 481-83).) The court addresses Defendants' arguments in turn.

## A.     Plaintiffs' LMRDA Title III Claims

Congress passed the LMRDA out of "concern with widespread abuses of power by union leadership." *Vought v. Wisconsin Teamsters Joint Council No. 39*, 558 F.3d 617, 621 (7th Cir. 2009 (quoting *Finnegan v. Leu*, 456 U.S. 431, 435 (1982)). The Act's primary objective is to "ensur[e] that unions [are] democratically governed and responsive to the will of their memberships." *Finnegan*, 456 U.S. at 436.

In enacting Title III of the LMRDA, Congress intended "to address problems related to

imposition of trusteeships over local unions." *Morris v. Hoffa*, 361 F.3d 177, 186 (3d Cir. 2004).

The LMRDA defines a trusteeship as "any receivership, trusteeship, or other method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution or bylaws." 29 U.S.C § 402(h). Congress was mindful "that trusteeships had been effective in the past to insure order within [labor] organizations," but was also aware that "in some instances trusteeships ha[d] been used as a means of consolidating the power of corrupt union officers, plundering and dissipating the resources of local unions, and preventing the growth of competing political elements within the organization." *Ross v. Hotel Emps. & Rest. Emps. Int'l Union*, 266 F.3d 236, 246 (3d Cir. 2001) (internal quotation marks omitted); *see also Sheet Metal Workers' Int'l Assoc. v. Lynn*, 488 U.S. 347, 356 n.8 (1989) (referencing Senate committee finding "that trusteeships were too often baselessly imposed" (internal quotation marks omitted)). And although the then-current law provided that a trusteeship would "ordinarily be set aside unless the local [was] given a fair hearing," a Senate committee found that in practice, there "appear[ed] to be little the courts [could] do and there [were] very few cases staying or upsetting trusteeships upon substantive grounds." *Ross*, 266 F.3d at 246 (internal quotation marks omitted). By placing restrictions on when and how trusteeships can be imposed, Congress sought to ensure that unions operated democratically without rendering trusteeships ineffective as "control device[s]." *Morris*, 361 F.3d at 186 (internal quotation marks omitted).

Accordingly, Section 462 of Title III provides that a labor organization can establish and administer a trusteeship "over a subordinate body" only in certain, enumerated circumstances, such as to "correct[] corruption or financial malpractice" or "restor[e] democratic procedures." 29 U.S.C. § 462. It also requires the labor organization to comply with its constitution and bylaws in imposing the trusteeship. *Id.* Additionally, Section 464(c) provides that a properly imposed trusteeship "shall be presumed valid for a period of eighteen months from the date of its establishment." 29 U.S.C. § 464(c). After that period has expired, "the trusteeship shall be

presumed invalid [in a proceeding brought under this section,] and its discontinuance shall be decreed unless the labor organization" shows "by clear and convincing proof that the continuation of the trusteeship is necessary for a purpose allowable under section 462." *Id.* Section 464(a) "creates [a] cause of action for relief from an illegal trusteeship and vests the district court with subject matter jurisdiction." *Stevens v. Northwest Indiana Dist. Council*, 20 F.3d 720, 724 (7th Cir. 1994); *see* 29 U.S.C. § 464(a). A district court can provide "relief (including injunctions) as may be appropriate." 29 U.S.C. § 464(a).

Plaintiffs allege that Defendants violated Section 464(c) of Title III by improperly extending the trusteeship beyond the eighteen-month period of presumed validity. (*See, e.g.*, First Am. Compl. ¶¶ 1, 9, 17, 19, 26.) As the court understands Plaintiffs' First Amended Complaint, the relief Plaintiffs originally sought for the alleged Title III violations was an order discontinuing the trusteeship by requiring Local 73 to conduct new elections for officers. (*See id.*, Prayer for Relief (1), (4).) Now that Local 73 has elected and installed new officers, Plaintiffs are asking the court to mandate yet another set of officer elections. (*See* Pls.' Opp. 2-3, 5.) Plaintiffs' other requests for relief—including their demand that the new elections be conducted pursuant to the Pre-Trusteeship Local 73 Constitution and Bylaws—are based on Title I. (*See id.*, Prayer for Relief (2)-(4); *see also* Pls.' Opp. 1, 3 (arguing that their "pre-election challenges" are "based on Title I" and concern "the validity and legality of the purported Amendments to the Local Constitution and Bylaws" and "even the substance of the election").)

Defendants argue that the court should dismiss Plaintiffs' Title III claims as moot because Local 73 has completed new officer elections; the newly elected officers have been installed; and the trusteeship has ended. (*See* Roan Decl. ¶¶ 5-9; Defs.' Br. 5-6; Defs.' Reply 1-2.) Plaintiffs do not appear to dispute that their Title III claims should be dismissed. Instead, they argue that their case survives without those claims because, as just referenced, it "involves pre-election challenges" that are "based on Title I of the LMRDA." (Pls.' Opp. 3.) Those Title I claims, Plaintiffs contend, confer jurisdiction on the court. (*See id.* at 3-4.)

The court agrees with Defendants (and Plaintiffs' apparent concession) that the Title III claims are no longer viable. (*See* Defs.' Br. 5-6; Defs.' Reply 1-2.) "To discern whether [a] trusteeship claim . . . has enduring legal relevance" after the trusteeship has ended, a court "must identify the injury for which relief is sought in the part of the complaint devoted to this particular alleged violation." *Stevens*, 20 F.3d at 724. Here, the alleged injury is the trusteeship, or, put another way, Local 73 members' loss of control over their organization. Under Title III, Plaintiffs seek only injunctive relief: an order to end the trusteeship via new elections. (*See* First Am. Compl., Prayer for Relief (1), (4); Pls.' Opp. 2 (stating that Plaintiffs brought this lawsuit "to compel an election, to end a Trusteeship which has surpassed its eighteen month allowable tenure, and to restore democracy").) The Seventh Circuit has held that in these circumstances, once a trusteeship has been terminated, claims challenging its propriety "bec[ome] moot" and are "no longer before the district court." *Air Line Stewards & Stewardesses Ass'n, Local 550, v. Transport Workers Union of Am.*, 334 F.2d 805, 807-08 (7th Cir. 1964) (rejecting plaintiffs' argument that the staffing effects of the trusteeship kept their claims alive, because the "removal [of the prior elected president] did not perpetuate the trusteeship indefinitely," and the termination of the trusteeship did not "depend upon [the president] being restored to the presidency"); *see also Stevens*, 20 F.3d at 726 (because the trusteeship was "terminated before th[e] suit was filed," plaintiffs' Title III claim "should have been dismissed for want of standing");[12] *Starr v. Int'l Bhd. of Elec. Workers*, No. 03 C 1760, 2003 WL 23509646, at *6 (N.D. Ill. Dec. 27, 2003) (granting summary judgment for defendants on plaintiffs' claim that imposition of a trusteeship violated Title III because the trusteeship had "effectively [come] to an end" and the claim was moot); *Colgan v. Carey*, No. 94 C 5685, 1995 WL 88974, at *3 (N.D. Ill. Feb. 24, 1995) ("The question of whether and when the trusteeship was presumed invalid was rendered moot by defendants' decision to

---

[12] The court in *Stevens* dismissed the claim for lack standing rather than mootness because the trusteeship ended before plaintiffs filed the lawsuit. *See id.* at 724 & n.11.

permit Local 705 to hold elections for self-government."); *Frank v. Ducy*, No. 85 C 9642, 1987 WL 6861, at *5 (N.D. Ill. Feb. 19, 1987) (the termination of the trusteeship incontrovertibly mooted plaintiffs' request for "a declaration that the trusteeship was void ab initio or that it is invalid because it has been maintained in a manner contrary to the purposes of the LMRDA"). A claim for monetary damages "as a remedy for a harm caused by" trustees during a trusteeship may survive a mootness challenge, *see Stevens*, 20 F.3d at 725 n.12, but Plaintiffs assert no such claim.

Courts in other Circuits have applied the same principles. For example, in *Taylor v. Siemens VDO Automotive Corp.*, 157 F. App'x. 557, 563 (4th Cir. 2005) (unpublished), the Fourth Circuit affirmed dismissal of plaintiffs' Title III claim as moot because the trusteeship had ended and plaintiffs had conceded "that the only relief [they were] seeking [was] injunctive relief essentially to prevent the International from imposing another trusteeship." *See also Thompson v. Office & Prof'l Emps. Int'l Union, AFL-CIO*, 74 F.3d 1492, 1504 (6th Cir. 1996) ("When a plaintiff sues for injunctive and/or declaratory relief once a trusteeship has been lifted, obviously there is no longer any relief to be had."); *Vars v. Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers*, 320 F.2d 576, 577 (2d Cir. 1963) (plaintiff's request for "the removal of [a] trusteeship alleged to have been wrongfully and illegally imposed" became "moot because of the removal of the trusteeship"); *Bowers v. Pipe Fitters Local Union*, Civil Action No. 4:09-cv-0878, 2010 WL 2303341, at *6 (S.D. Tex. June 7, 2010) ("The Court holds that the issue of whether the trusteeship was invalid under Title III has been rendered moot. The local union held elections, officers were installed, and the trusteeship dissolved. No injunctive relief is appropriate at this stage."); *compare Int'l Longshoremen's Ass'n, Local 333 v. Int'l Longshoremen's Ass'n, AFL-CIO*, 687 F. App'x. 315, 321-22 (4th Cir. 2017) (unpublished) (determining that because plaintiffs sought not only injunctive relief, but also monetary damages for trustees' alleged improper expenditures, the question regarding the propriety of the trusteeship was not moot).

Notably, courts in the Sixth Circuit have held that "[t]he question of the propriety of [a] trusteeship is not moot" when "it has direct bearing on whether [a plaintiff's] Title I rights were violated." *Thompson*, 74 F.3d at 1504; *see also In re Estate of Bernard v. Int'l Bhd. of Teamsters*, Case No. 15-11107, 2015 WL 5611551, at *4-5 (E.D. Mich. Sept. 23, 2015) (plaintiffs' Title III claim survived even though the trusteeship had effectively ended because plaintiffs' ability to "recover under Title I" depended on whether the trusteeship was legally imposed). Even if the Seventh Circuit would adopt the same reasoning, this court concludes, as discussed below, that it lacks jurisdiction over Plaintiffs' Title I claims as well. Thus, the pendency of claims under Title I does not support jurisdiction over Title III claims in the circumstances presented here. Plaintiffs' Title III claims are moot, and are dismissed for lack of subject matter jurisdiction. *See H.P. ex rel. W.P.*, 910 F.3d at 960; *Chicago Joe's Tea Room*, 894 F.3d at 815.

B.     **Plaintiffs' LMRDA Title I Claims**

Title I of the LMRDA, 29 U.S.C. §§ 411-15, "provides union members with an exhaustive 'Bill of Rights' enforceable in federal court." *Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehouseman & Packers v. Crowley*, 467 U.S. 526, 536 (1984) ("*Crowley*"). "In particular, Title I is designed to guarantee every union member equal rights to vote and otherwise participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline." *Id.* at 536-37; *see also Vought*, 558 F.3d at 621. The LMRDA restricts the relief a federal court may grant for Title I violations to that which "may be appropriate." 29 U.S.C. § 412; *see Crowley*, 467 U.S. at 538.

Plaintiffs' Title I claims concern "the validity and legality of" the Amended Local 73 Constitution and Bylaws. (Pls.' Opp. 1; *see also id.* at 3.) Plaintiffs allege, for example, that Defendants amended the constitution and bylaws for an illegal purpose: to stifle political dissent. Evidence of this illegal purpose, Plaintiffs contend, includes Defendants' decision to suspend and then terminate officer candidates on the MLM slate from their positions as Local 73 staff members; Defendants' failure to seek input on the amendments from the general membership; and the

amendments themselves, which eliminated certain elected positions and changed eligibility requirements for others. (*See* First Am. Compl. ¶¶ 25-29.) Plaintiffs also represent that Defendants proposed the amendments only after this court stated that "elections would be . . . forthcoming," so that they could "sway the outcome" of the election. (Pls.' Opp. 5.) The court interprets these allegations as claims asserted under Section 101(a)(2) of the LMRDA, which guarantees freedom of speech and assembly. 29 U.S.C. § 411(a)(2). In addition, Plaintiffs allege that the process for ratifying the amendments violated the SEIU Constitution and Bylaws, the Pre-Trusteeship Local 73 Constitution and Bylaws, and Title I of the LMRDA. Defendants, for example, did not provide proper notice to Local 73 members about the substance of the amendments; limited polling locations; failed to protect ballot boxes; and failed to ensure that an independent body counted the votes. (First Am. Compl. ¶¶ 30-33.) The court interprets these allegations as claims under Section 101(a)(1) of the LMRDA, which guarantees (among other things) equal rights in voting and attending membership meetings. 29 U.S.C. § 411(a)(1).

Plaintiffs ask the court for an order (1) reinstating the Pre-Trusteeship Local 73 Constitution and Bylaws; (2) declaring the Amended Local 73 Constitution and Bylaws invalid; and (3) requiring new elections to be conducted in accordance with the Pre-Trusteeship Local 73 Constitution and Bylaws. (*See* First Am. Compl., Prayer for Relief (2)-(4).) Defendants contend that granting any of this relief "would require voiding the election that just occurred." (Defs.' Mot. 7.) Because "challenging an election already conducted" is relief that only the Secretary of Labor can provide, Defendants argue, the court must dismiss Plaintiffs' Title I claims for lack of subject matter jurisdiction. 29 U.S.C. § 483.

Analysis of this jurisdictional defense requires consideration of yet another section of LMRDA: Title IV. Title IV of the LMRDA, 29 U.S.C. §§ 481-83, "specifically regulates the conduct of elections for union officers, and therefore protects many of the same rights as does Title I." *Crowley*, 467 U.S. at 539. But "Title IV, not Title I, sets standards for eligibility and qualifications of candidates and officials." *Calhoon v. Harvey*, 379 U.S. 134, 138 (1964). Furthermore, unlike

Title I, which is enforced "through suits by individual union members in federal district court," Title IV "contains its own comprehensive administrative and judicial [enforcement] procedure." *Crowley*, 467 U.S. at 537, 539. That procedure dictates that any union member who alleges a Title IV violation "must first exhaust any internal remedies available under the constitution and bylaws of his union." *Id.* at 539; 29 U.S.C. § 482(a); *see also, e.g.*, *Chao v. Local 743, Int'l Bhd. of Teamsters, AFL-CIO*, 467 F.3d 1014, 1017 (7th Cir. 2006); *Corner v. Solis*, 380 F. App'x. 532, 535 (7th Cir. 2010) (unpublished). After exhausting internal remedies, the union member may file a complaint with the Secretary of Labor, who "shall investigate" it. 29 U.S.C. §§ 482(a), (b); *see Crowley*, 467 U.S. at 539. If the Secretary of Labor "finds probable cause" for intervention, she may sue the union directly in district court. 29 U.S.C. § 482(b); *see Crowley*, 467 U.S. at 539.

Congress "included in Title IV an exclusivity provision that explains the relationship between the enforcement procedures established for violations of Title IV and the remedies available for violations of potentially overlapping state and federal laws." *Crowley*, 467 U.S. at 540. It provides, in relevant part: "Existing rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections *prior to the conduct thereof* shall not be affected by the provisions of this subchapter. *The remedy provided by this subchapter for challenging an election already conducted shall be exclusive*." 29 U.S.C. § 483 (emphasis added); *see Crowley*, 467 U.S. at 541 ("[T]he exclusivity provision included in [29 U.S.C. § 483] of Title IV plainly bars Title I relief when an individual union member challenges the validity of an election that has already been completed."); *Trbovich v. United Mine Workers*, 404 U.S. 528, 531 (1972) (29 U.S.C. § 483 "prohibits union members from initiating a private suit to set aside an election"); *Chao*, 467 F.3d at 1017 ("[T]he remedy provided by this subchapter for challenging an election already conducted shall be exclusive." (quoting 29 U.S.C. § 483)); *Driscoll v. Int'l Union of Operating Eng'rs, Local 139*, 484 F.2d 682, 686 (7th Cir. 1973) (A "complaint to and an action brought by the Secretary of Labor . . . is the exclusive means of challenging an election already conducted"); *Corner v. Englehart*, No. 11 C 5183, 2011 WL 4688723, at *3 (N.D. Ill. Oct. 4, 2011)

(same); *Tenuto v. Clair*, No. 08 cv 1617, 2008 WL 4594514, at *2 (N.D. Ill. Oct. 14, 2008) (same).

Plaintiffs try to escape Title IV's exclusivity provision in several ways. First, they argue that the purpose of the exclusivity provision is to "preclude any private action by disappointed office seekers to contest the results of the election." (Pls.' Opp. 2 (quoting *Sadlowski v. Marshall*, 464 F. Supp. 858, 862 (D.D.C. 1979).)[13]  Plaintiffs insist they are not contesting the "outcome" of the election or "seeking the installation of their candidate," but rather are "seek[ing] a fair election, something they are entitled to under the LMRDA." (Pls.' Opp. 2-3.)  The court is unable to comprehend the purported distinction. As Plaintiffs themselves admit, ordering Defendants to conduct a "fair" election would necessarily mean ordering them to conduct a new election under the Pre-Trusteeship Local 73 Constitution and Bylaws. (*See* Pls.' Opp. 5 ("If the Court finds either that the intention behind the amendments was violative of the LMRDA or that the amendment procedure did not comply with applicable procedures and rules, it must hold the constitutional amendment vote invalid *and order an immediate election* under the Local 73 Constitution and Bylaws in effect at the time of the imposition of the Trusteeship." (emphasis added)).)  Because the October 2018 election was governed by the Amended Local 73 Constitution and Bylaws, granting the requested relief would invalidate "an election already conducted." 29 U.S.C. § 483. Plaintiffs can seek this remedy only from the Secretary of Labor, *see id.*, and report that they intend to do so. (*See* Pls.' Opp. 3 (stating that they "will seek to assert" post-election challenges "through all legal avenues available"); *see also* Pls.' Status Rpt. ¶ 4 (stating that Jaos and certain members of the MLM slate plan to file a post-election appeal with the Department of Labor).)

Plaintiffs next contend that the court has subject matter jurisdiction over their Title I claims because the claims articulate "pre-election" challenges. (*See* Pls.' Opp. 1, 3.)  If Plaintiffs' argument is that the court has jurisdiction simply because Plaintiffs asserted their Title I claims

---

[13]     The court notes that the quoted portion of *Sadlowski* refers to the effect, not the purpose, of the exclusivity provision.  *See* 464 F. Supp. at 862.

before the election occurred, it is unavailing. As Defendants point out, courts have recognized that jurisdiction depends on the substance of a claim and the relief sought, not on when the claim was filed. Indeed, in *Crowley*, union members filed an action in federal court for alleged Title I violations "after the distribution of ballots had been completed," but before the deadline for returning the ballots. 467 U.S. at 530, 534. The district court enjoined the ongoing election and ordered a new election to be conducted using court-ordered procedures, and the Court of Appeals affirmed that injunction. *Id.* at 533, 34. But the Supreme Court reversed, holding that "whether suits alleging violations of Title I of the LMRDA may properly be maintained during the course of a union election depends upon the appropriateness of the remedy required to eliminate the claimed statutory violation." *Id.* at 550. In light of Congress's determination to "vest[] the Secretary [of Labor] with exclusive supervisory authority over new union elections," the Court found that the "invalidation of [an] election already being conducted" is not "appropriate" relief under Title I, nor is "court supervision of a new election." *Id.* at 547, 549-50. Similarly, in *Driscoll*, the Seventh Circuit determined that plaintiff's "pre-election" Title I claim "'basically relate[d]' to eligibility" for office and therefore "stat[ed] a cause of action" that could "be enforced only under the provisions of Title IV." 484 F.2d at 686 (quoting *Calhoon*, 379 U.S. at 141, in which the Supreme Court reached a nearly identical result). That Plaintiffs asserted their Title I claims before the October 2018 election does not confer jurisdiction on this court.

Plaintiffs also appear to argue that the court has jurisdiction over their Title I claims because they do not concern the election results themselves, but rather the illegal purpose behind and ratification process for the Amended Local 73 Constitution and Bylaws. (*See, e.g.*, Pls.' Opp. 1-3.) This is no more than a variation on Plaintiffs' unsuccessful argument that they do not seek to contest the election results. It also draws a false distinction: First, to the extent Plaintiffs contend that the candidate eligibility requirements in the Amended Local 73 Constitution and Bylaws are improper, they "stat[e] a cause of action which can be enforced only under the provisions of Title IV." *Driscoll*, 484 F.2d at 686; *see also Calhoon*, 379 U.S. at 141. Second, as

previously discussed, the relief Plaintiffs seek for all of their Title I claims would necessarily overturn the results of the October 2018 election. Regardless of how Plaintiffs label their claims, Title IV's exclusivity provision divests this court of jurisdiction over them. *See Driscoll*, 484 F.2d at 686 n.9 (stating that the court must analyze the "substance . . . and basic nature" of the claims to "determine whether jurisdiction exists"); *see also Calhoon*, 379 U.S. at 138 (jurisdiction for Title I claims cannot "be upheld by reliance in whole or in part on allegations which in substance charge a breach of Title IV rights"); *Berg v. Strickland*, 229 F. Supp. 2d 875, 879-80 (N.D. Ill. 2002) (striking all "prayers for relief that seek to effectively invalidate the 2001 election," including "demands for declarations of violations of the LMRDA").

Other courts have similarly determined that Title IV preempts Title I claims that seek to invalidate and/or reinstate union constitutions or bylaws after an election. *See, e.g.*, *Davis v. United Auto. Workers of Am.*, 390 F.3d 908, 912 (6th Cir. 2004) (affirming dismissal of plaintiff's Title I claim, which sought rescission of an allegedly retaliatory amendment, because the relief would have invalidated elections conducted after the amendment and was therefore "available only under Title IV"); *Robles v. Int'l Longshoremen Ass'n AFL-CIO (ILA)*, 491 F. Supp. 2d 205, 209 (D.P.R. 2006) (where plaintiff, asserting a Title I claim, asked the court to "rescind [an] amended bylaw and order a new election," the court dismissed the claim for lack of subject matter jurisdiction because the requested relief "would have the same practical effect as explicitly annulling" a completed election); *Russo v. Ottley*, No. 83-2863, 1983 WL 2067, at *2 (S.D.N.Y. June 5, 2983) (court lacked jurisdiction over "a post-election challenge by dissident union members to the validity of amendments to the union constitution").

In a final effort to save their claims, Plaintiffs argue that the court has jurisdiction under Section 301(a) of the Labor Management Relations Act ("LMRA"), which provides that "[s]uits for violations of contracts between . . . labor organizations[] may be brought" in federal court. 29 U.S.C. § 185(a). Thus, for example, in *United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO v. Local 334*, 452

U.S. 615, 616, 627 (1981) ("*Journeymen*"), the Court held that union constitutions are "contracts" within the meaning of Section 301(a); thus, "a suit brought by a local union against its parent international union, alleging a violation of the international's constitution, falls within § 301(a) jurisdiction of the federal courts."  Plaintiffs contend that their case is "closely akin to *Journeymen*" because it is "based upon" Defendants' "multiple violations of its own Constitution." (Pls.' Opp. 2.)

This argument, too, misses the mark.  As Defendants point out, Plaintiffs' First Amended Complaint does not assert any claims under LMRA Section 301(a).  And even if it could be read to do so, Plaintiffs request the same remedies for the alleged Section 301(a) violations as for the alleged Title I violations.  Accordingly, for the reasons just discussed, the purported Section 301(a) claims are, in substance, direct challenges to a completed election, and Title IV's exclusivity provision applies.  *See, e.g.*, *Bermingham v. Castro*, 191 F.3d 459, 1999 WL 644342, at *2 (9th Cir. 1999) (unpublished) (affirming dismissal of Section 301(a) claim for union's alleged breach of local constitution as preempted by Title IV, because the damages plaintiff sought "effectively challenge[d] the validity of the election already conducted"); *Murray v. Amalgamated Transit Union*, 206 F. Supp. 3d 202, 211 (D.D.C. 2016), *amended in part*, 220 F. Supp. 3d 72 (D.D.C. 2016), and *aff'd*, 719 F. App'x. 5 (D.C. Cir. 2018) (determining that claim was in "essence" a "direct challenge to the validity of an election," and the fact that it invoked "state common law (or, in the alternative, LMRA § 301) [did] not remove it from the ambit of Title IV's exclusivity provisions").

Plaintiffs' Title I claims (and their purported LMRA Section 301(a) claims) are dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the court grants Defendants' Motion to Dismiss the Amended Complaint for Lack of Jurisdiction [79]. The parties' post-hearing briefs and Defendants' Motion to Dismiss the Amended Complaint for Failure to State a Claim are terminated [57, 59, 60].

ENTER:

_____
REBECCA R. PALLMEYER
United States District Judge

Date:   March 21, 2019